## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MALKA RAUL,<br><br>                        Plaintiff,<br><br>    v.<br><br><br>ROGERS CORPORATION, BRUCE D. HOECHNER, KEITH L. BARNES, MEGAN FAUST, CAROL R. JENSEN, KEITH LARSON, GANESH MOORTHY, JEFFREY J. OWENS, HELENE SIMONET, and PETER C. WALLACE,<br><br>                        Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Malka Raul ("Plaintiff") by and through her undersigned attorneys, brings this action on behalf of herself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Rogers Corporation ("Rogers" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning Rogers and the Defendants.

## SUMMARY OF THE ACTION

1.      This is an action brought by Plaintiff against Rogers and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed transaction (the "Proposed Transaction") between the Company and DuPont De Nemours, Inc. ("DuPont").

2.      On November 1, 2021, the Company entered into an Agreement and Plan of Merger (the "Merger Agreement") with DuPont and Cardinalis Merger Sub, Inc. ("Merger Sub"), a wholly owned subsidiary of DuPont.  Pursuant to the terms of the Merger Agreement, Merger Sub will merge with and into Rogers, with Rogers surviving the merger as a wholly owned subsidiary of DuPont. As a consequence of the merger, the Company's shareholders will receive $277.00 in cash for each share of Rogers common stock they own (the "Merger Consideration").

3.      On December 16, 2021, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading proxy statement with the SEC (the "Proxy Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Rogers and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Rogers shareholders before the vote on the Proposed Transaction or, in the event the Proposed

Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6.      This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8.      Plaintiff is, and has been at all times relevant hereto, the owner of Rogers shares.

9.      Defendant Rogers is incorporated under the laws of Massachusetts and has its principal executive offices located at 2225 W. Chandler Blvd., Chandler, Arizona 85224.  The Company's common stock trades on the New York Stock Exchange under the symbol "ROG."

10.     Defendant Bruce D. Hoechner ("Hoechner") is and has been the President, Chief Executive Officer ("CEO") and a director of Rogers at all times during the relevant time period.

11.     Defendant Keith L. Barnes ("Barnes") is and has been a Rogers director at all times during the relevant time period.

12.     Defendant Megan Faust ("Faust") is and has been a Rogers director at all times during the relevant time period.

13.     Defendant Carol R. Jensen ("Jensen") is and has been a Rogers director at all times during the relevant time period.

14.     Defendant Keith Larson ("Larson") is and has been a Rogers director at all times during the relevant time period.

15.     Defendant Ganesh Moorthy ("Moorthy") is and has been a Rogers director at all times during the relevant time period.

16.     Defendant Jeffrey J. Owens ("Owens") is and has been a Rogers director at all times during the relevant period.

17.     Defendant Helene Simonet ("Simonet") is and has been a Rogers director at all times during the relevant time period.

18.     Defendant Peter C. Wallace ("Wallace") is and has been the Chairman of the Board of Directors of Rogers at all times during the relevant period.

19.     Defendants Hoechner, Barnes, Faust, Jensen, Larson, Moorthy, Owens, Simonet, and Wallace are collectively referred to herein as the "Individual Defendants."

20.     The Individual Defendants, along with Defendant Rogers, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

21.     Rogers, designs, develops, manufactures, and sells engineered materials and components worldwide. It operates in Advanced Connectivity Solutions (ACS), Elastomeric Material Solutions (EMS), Power Electronics Solutions (PES), and Other segments. The ACS

segment offers circuit materials and solutions for connectivity applications in wireless infrastructure, automotive, aerospace and defense, connected devices, and wired infrastructure under the RO4000, RO3000, RT/duroid, TMM, AD Series, CuClad, Kappa, DiClad, IsoClad, COOLSPAN, MAGTREX, TC Series, IM Series, 92ML, and CLTE Series names. The EMS segment provides engineered material solutions, including polyurethane and silicone materials used in cushioning, gasketing, sealing, and vibration management applications for general industrial, portable electronics, automotive, mass transit, aerospace and defense, footwear and impact mitigation, and printing markets; customized silicones used in flex heater and semiconductor thermal applications; and polytetrafluoroethylene and ultra-high molecular weight polyethylene materials used in wire and cable, electrical insulation, and automotive applications under the PORON, BISCO, DeWAL, ARLON, Griswold, eSORBA, XRD, HeatSORB, and R/bak names. The PES segment offers ceramic substrate materials, busbars, and cooling solutions under the curamik and ROLINX names. The Other segment provides elastomer components; and elastomer floats for level sensing in fuel tanks, motors, and storage tanks for applications in the general industrial and automotive markets under the NITROPHYL and ENDUR names.

### The Company Announces the Proposed Transaction

22.     On November 2, 2021, the Company jointly issued a press release announcing the Proposed Transaction.  The press release stated in part:

> Chandler, Arizona, November 2, 2021: Rogers Corporation (NYSE:ROG) announced today that it has entered into a definitive merger agreement to be acquired by DuPont (NYSE: DD) in an all-cash transaction that values Rogers at approximately $5.2 billion.
>
> The transaction delivers substantial value to Rogers' shareholders, who will receive $277 in cash per share, representing a 33% premium over Rogers' closing

share price on November 1, 2021, and a 46% premium to the 1-month volume weighted average share price.

Following the closing of the transaction, Rogers will be integrated into DuPont's Electronics & Industrial business unit. Rogers significant applications engineering, design expertise, and deep customer relationships form a strong strategic fit with DuPont's innovation capabilities and collaborative approach to solving the most complex customer challenges.

"Rogers is a recognized global leader in advanced materials solutions, and this combination with DuPont will help accelerate our long-term growth in EV/HEV, ADAS and other key markets," stated Bruce D. Hoechner, Rogers' President and CEO. "The Rogers' team has created a growth-focused organization built on a foundation of strong technology leadership and customer intimacy. Our combination with DuPont, a proven leader in technology-based materials, provides resources and support to allow Rogers to scale for success. Rogers is a natural fit with DuPont, and this combination will create an exciting next chapter for Rogers' customers, employees and partners."

"Rogers is a results-driven organization with excellent technical expertise and deep customer relationships that align well with DuPont's leading innovation and applied material science capabilities," said Ed Breen, DuPont Executive Chairman and CEO. "The combination of Rogers with our Electronics & Industrial business further strengthens our market-leading portfolio and ability to bring new solutions to exciting end markets. We look forward to welcoming Rogers' employees and working together to deliver essential innovations that help our customers and company grow."

**Transaction Details**

The Board of Directors of Rogers has unanimously approved the agreement with DuPont and recommends that the Rogers' shareholders vote in favor of the transaction at the Special Meeting of Shareholders to be called in connection with the transaction.

The transaction is expected to close in the second quarter of 2022, subject to customary closing conditions, including approval by Rogers' shareholders and receipt of regulatory approvals.

J.P. Morgan Securities LLC served as exclusive financial advisor to Rogers on the transaction; Covington & Burling LLP and Hinckley, Allen & Snyder LLP served as outside legal counsel.

**FALSE AND MISLEADING STATEMENTS**
**AND/OR MATERIAL OMISSIONS IN THE PROXY STATEMENT**

23.    On December 16, 2021, the Company authorized the filing of the Proxy Statement with the SEC.  The Proxy Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

24.    Defendants were obligated to carefully review the Proxy Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.    However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

**Material False and Misleading Statements or Material**
**Misrepresentations or Omissions Regarding the Company's Financial Projections**

25.    The Proxy Statement contains projections prepared by the Company's management concerning the Proposed Transaction, but fails to provide material information concerning such.

26.    The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1]  Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

27.     In order to make management's projections included in the Proxy Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

28.     Specifically, with respect to the Company's projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including: (i) Adjusted EBITDA; (ii) Free Cash Flow; and (iii) Unlevered Free Cash Flow.

29.     Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction.   Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding J.P. Morgan's Financial Opinion**

30.     The Proxy Statement contains the financial analyses and opinion of J.P. Morgan Securities LLC ("J.P. Morgan") concerning the Proposed Transaction, but fails to provide material information concerning such.

---

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

31.     With respect to J.P. Morgan's *Public Trading Multiples Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for each of the companies observed in the analysis.

32.     With respect to J.P. Morgan's *Selected Transaction Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for each of the transactions observed in the analysis.

33.     With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the range of terminal asset values for Rogers at the end of the six-year period ending in 2026; (ii) the inputs and assumptions underlying J.P. Morgan's use of a perpetual growth rate range of 4.0% to 5.0%; (iii) the inputs and assumptions underlying J.P. Morgan's use of a discount rates range of 9.0% to 10.5%; and (iv) the Company's weighted average cost of capital.

34.     With respect to J.P. Morgan's *Analyst Price Targets for the Company* analysis, the Proxy Statement fails to disclose: (i) the individual price targets observed in the analysis; and (ii) the sources thereof.

35.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

36.     Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

**(Against All Defendants for Violations of Section 14(a)
of the Exchange Act and Rule 14a-9 Promulgated Thereunder)**

37.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

39.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

40.     Defendants have issued the Proxy Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and

authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

41.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

42.     The Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

43.     The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Proxy Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

44.     The Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Proxy Statement or

failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

45.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

46.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act)

47.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

48.     The Individual Defendants acted as controlling persons of Rogers within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Rogers, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

49.     Each of the Individual Defendants was provided with, or had unlimited access to,

copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

50.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

51.     In addition, as set forth in the Proxy Statement at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

52.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

53.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

54.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     Directing the Individual Defendants to disseminate an Amendment to the Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C.     Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D.     Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: January 14, 2022                                     Respectfully submitted,

By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW LLP**
1190 Broadway,
Hewlett, New York 11557
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*